UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


BRANCH BANKING AND TRUST COMPANY,

                    Plaintiff,

v.                                              Case No. 8:10-cv-02464-T-23AEP

LAWRENCE T. MAXWELL,

                    Defendant.

_____/

### REPORT AND RECOMMENDATION

Plaintiff Branch Banking and Trust Company ("BB&T") brought this action against Defendant Lawrence T. Maxwell ("Maxwell") to recover its losses from the default of a commercial loan (Dkt. No. 1). Following judgment entered in its favor, BB&T sought to collect on its judgment. In its efforts to collect on the judgment, BB&T had writs of garnishment issued to banks in which Maxwell purportedly held accounts, including SunTrust Bank ("SunTrust"). Maxwell subsequently filed a verified objection to and motion to dissolve the writ of garnishment served upon SunTrust (Dkt No. 62). For the reasons that follow, I recommend that the motion to dissolve the writ of garnishment (Dkt. No. 62) be granted.[1]

### A.    Background

Maxwell signed a Guaranty for a commercial loan from Colonial Bank, BB&T's predecessor-in-interest, on behalf of two Florida limited liability companies, Century (III) DP,

_____

[1] The district judge referred this matter for issuance of a report and recommendation (Dkt. No. 90). *See* 28 U.S.C. § 636 and Local Rule 6.01.

LLC and Odyssey (III) DP III, LLC (Dkt. No. 1, Exhs. A, B).  After a default on the loan, BB&T commenced this action against Maxwell to enforce the terms of the Guaranty and recover $2,323,461.38.  Maxwell failed to file a response to the complaint, and a default judgment was subsequently entered against him (Dkt. No. 10).  Maxwell later sought relief from the default judgment or for entry of full or partial satisfaction of the default judgment (Dkt. No. 13).  Upon consideration, the Court found that Maxwell's liability and default stood but that a reduction of the judgment was necessary given BB&T's acquisition of property serving as collateral (Dkt. Nos. 18, 32, 35).  Following proposed calculations of the sum certain for a final judgment, the Court entered judgment in favor of BB&T and against Maxwell in the amount of $1,217,143.31 plus judgment interest (Dkt. Nos. 32-36).

In aid of execution of the final judgment, BB&T issued a Writ of Garnishment ("the Writ") to SunTrust (Dkt. No. 49).  SunTrust filed its answer to the Writ stating that it had two pertinent accounts listed for Maxwell: an account titled in the name of Maxwell and his wife, Cheri L. Maxwell, ("the 4342 account") and an account titled solely in Maxwell's name ("the 5520 account") (Dkt. No. 60).  SunTrust noted that the 5520 account held a balance of $257,288.77.

Maxwell subsequently filed his objection to and motion to dissolve the Writ (Dkt. No. 62).  By the motion, Maxwell contends that the property held by SunTrust is owned by the Maxwells as tenancy by the entireties ("TBE") and therefore exempt from judgment.[2]  According

---

[2]  In the motion, Maxwell also asserts that the funds in the 5520 account ("the Disputed Funds") constitute homestead property and are consequently exempt from the judgment (Dkt. No. 62 at 4-7).  During the evidentiary hearing held on August 6, 2012, however, Maxwell withdrew this argument.  Accordingly, the Court need not consider

to Maxwell, he and his wife experienced "significant issues" with TAMKO Lamarite shingles installed on their roof (Dkt. No. 62 at 4).  The Maxwells resolved their claims with the TAMKO manufacturer in early April 2012, and TAMKO tendered the Maxwells a check ("the TAMKO check") made out in the names of both Maxwell and his wife in the amount of $257,346.00.  Mrs. Maxwell deposited the TAMKO check into the jointly-held 4342 account on April 13, 2012 (Dkt. No. 62, Composite Exhibit C).  Maxwell later transferred $257,384.77 from the 4342 account to the 5520 account on April 16, 2012 (Dkt. No. 62, Exh. H).  BB&T asserts that the $257,288.77 currently held in Maxwell's 5520 account is subject to the Writ (Dkt. No. 80).

 After considering the parties' arguments, the Court held an evidentiary hearing.  During the hearing, both parties stipulated that the TAMKO check constituted TBE property.  Notwithstanding, BB&T argued that the Disputed Funds should be subject to the Writ.

### B.      Discussion

Pursuant to Rule 69, Federal Rules of Civil Procedure, the procedure on execution of a money judgment, and in proceedings supplementary to and in aid of judgment or execution, must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.  Fed. R. Civ. P. 69(a)(1).  Accordingly, the law of the State of Florida is applicable to these proceedings.[3]  In Florida, every entity that has obtained a judgment in any court against any person has a right to a writ of garnishment as set forth in the Chapter 77 of the Florida Statutes.  *See* Fla. Stat. § 77.01.  After issuance of a writ of garnishment, a defendant may,

_____

whether the Disputed Funds constitute homestead property.

   [3] Neither party disputes that Florida law applies.

by motion, obtain the dissolution of the writ, unless the plaintiff proves the grounds upon which the writ was issued.  Fla. Stat. § 77.07(1).

Here, Defendant filed his motion seeking to dissolve the Writ arguing that the Disputed Funds constitute TBE property and are thereby not subject to garnishment.  In response, BB&T sets forth two arguments as to why the Disputed Funds should be subject to garnishment. During the hearing, BB&T first argued that the 4342 account does not constitute a TBE account.[4] According to BB&T, the 4342 account does not constitute a TBE account because Maxwell opened the account prior to Mrs. Maxwell being named to the account.  Accordingly, BB&T contends that, by depositing the funds into the 4342 account, Mrs. Maxwell destroyed the TBE status of the TAMKO check funds.  BB&T argues further that, even if the 4342 account constitutes a TBE account, Mrs. Maxwell relinquished her control of her TBE property via tacit consent to Maxwell's transfer of the funds to the 5520 account, as established by her signature on the 4342 account's signature card.

In Florida, a married couple may own property as TBE.  *See Beal Bank, SSB v. Almand & Assocs.*, 780 So.2d 43, 52-53 (Fla. 2001).  The six necessary unities of TBE property consist of: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the property must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5)

---

[4]  In response to the instant motion, BB&T initially stated it did not dispute that the 4342 account constitutes a TBE account (Dkt. No. 80 at 2, 7).  Although BB&T now argues that the 4342 account does not constitute a TBE account, BB&T does not argue that any funds in the 4342 account should be subject to garnishment.  Instead, BB&T focuses upon garnishment of the Disputed Funds in the 5520 account.

survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). *Id.* at 52 (citations and footnote omitted). When real property is titled in the name of both spouses and the other six unities are established, an intent to hold the property as TBE is presumed. *Id.* at 54-55. A rebuttable presumption of TBE extends to personal property when the same conditions are satisfied. *See id.* at 57-58 (holding that presumption arises that a bank account titled in the names of both spouses is held as TBE if established in accordance with the six unities). In cases involving personal property, therefore, the burden shifts to the creditor to prove by a preponderance of the evidence that TBE was not created. *Id.* at 58-59.

Once established, the only way to terminate TBE is (1) by the death of one spouse, (2) divorce, (3) if both spouses convey the property to a third party, or (4) if one spouse conveys the property to the other spouse. *In re Koesling*, 210 B.R. 487, 489 (Bankr. N.D. Fla. 1997); *see Passalino v. Protective Group Servs*, 886 So.2d 295, 297 (Fla. 4th DCA 2004) (citing *Sheldon v. Waters*, 168 F.2d 483, 485 (5th Cir. 1948)).[5] One spouse may not alienate a portion of TBE property without the consent of the other. *Beal Bank*, 780 So.2d at 53. For example, under this non-severability doctrine, the indivisibility of funds in a TBE bank account preserves the TBE status of the funds even after one spouse renames an account or transfers money from it without the consent of the other. *Sitomer v. Orlan*, 660 So.2d 1111, 1114 (Fla. 4th DCA 1995).[6] Indeed, no persons except the husband and wife have a present interest in TBE property when such

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[6] This characteristic distinguishes TBE property from property held as a joint tenancy with right of survivorship. *Beal Bank*, 780 So.2d at 56.

property is unencumbered by any lien existing prior to the creation of such property and is

unencumbered by any lien created jointly by the husband and wife after the TBE came into being.

*Hunt v. Covington*, 200 So. 76, 77 (Fla. 1941).   Accordingly, a TBE account is not divisible on

behalf of one spouse alone and therefore cannot be reached by creditors to satisfy the obligation

of only one spouse.  *Beal Bank*, 780 So.2d  at 53; *Hunt*, 200 So. at 77 (finding that TBE property

is not subject to execution for the debt of the husband alone); *Sitomer*, 660 So.2d at 1114 ("The

non-severability aspect of a tenancy by the entirety precludes a bank account so held from being

subject to execution to satisfy an individual debt of either spouse."); *Antuna v. Dawson*, 459

So.2d 1114, 1116-17 (Fla. 4th DCA 1984) ("[A]n account held by husband and wife as tenants

by the entireties is beyond the reach of a creditor of either one of the tenants.  Such funds are

immune from garnishment except where the debt was incurred by both spouses.").  Only the

creditors of both the husband and wife, jointly, may attach property held as TBE.  *Beal Bank*, 780

So.2d at 53.

In this instance, BB&T argues that the jointly-held 4342 account is not TBE and that Mrs.

Maxwell's transfer of the TAMKO check funds into the 4342 account destroys the TBE status

of the TAMKO check funds.  BB&T argues that the 4342 account is not a TBE account because

it had originally been opened solely in Maxwell's name, and Mrs. Maxwell was only later

authorized as a signatory to the account.  *See* Dkt. No. 62, Exh. 4.  Essentially, BB&T contends

the 4342 account does not constitute a TBE account because the Maxwells lacked the unity of

time in opening the account.  The status of the 4342 account is irrelevant, however, because the

unity of time and all other unities existed as to the *TAMKO check*.  The TAMKO check is

6

therefore TBE property.  In fact, both parties stipulated to that fact.  The TBE status of the 4342

account is thus significant only if the deposit of TBE funds into a non-TBE account destroys the

funds' TBE status.  Absent contrary intent, the transfer of TBE property into a non-TBE account

does not necessarily terminate its TBE status.  *See, e.g., Passalino*, 886 So.2d at 297-98 (rejecting

claim that joint conveyance of proceeds upon sale of TBE property to attorney's trust account

destroyed unities of possession and title when attorney in charge of the trust was in possession

of the funds and was only person with authority to sign on account).  Consequently, the mere

deposit of the TAMKO check into the 4342 account, whether itself a TBE account or not, did not

itself suffice to eliminate the TBE character of the funds.

Given that, the Court must determine whether Mrs. Maxwell clearly intended to destroy

the TBE status of the TAMKO check funds by depositing the funds into the 4342 account.  Under

Florida law, any deposit or account made in the name of two persons who are husband and wife

shall be considered TBE unless otherwise specified in writing.[7]  Fla. Stat. § 655.79(1).  This

---

[7]  Notably, the operative "Rules and Regulations for Deposit Accounts" for the 4342
account identifies a TBE account as the following:

> **"Joint Tenants by the Entirety Account"** is a joint account held by husband
> and wife together and as recognized by applicable state law where the Account
> is opened.  For signature withdrawal purposes, the title of the Account will
> reflect the connector "or" between the names of the husband and wife.  Upon
> the death of one of the spouse owners, the Account will belong to the surviving
> spouse owner.  Each owner may withdraw, by any means we make available,
> any or all of the funds on deposit, close the Account, enter into special
> agreements regarding the Account including overdraft protection transfer
> agreements, and stop payment on any check or draft drawn on the Account.
> Each owner guarantees the signatures of the other owner and authorizes the
> other owner to endorse checks for deposit if they are payable to any of the
> owners.  Each owner also authorizes the Bank to exercise its right of offset
> (setoff) and enforce SunTrust's security interest in the entire Account, even

presumption may be overcome only by proof of fraud or undue influence or clear and convincing evidence of a contrary intent.  Fla. Stat. § 655.79(2).

Here, the TAMKO check was issued in the names of both Maxwell and Mrs. Maxwell (Dkt. No. 62, Exh. B).  Unless otherwise indicated in writing, the presumption arises that Mrs. Maxwell intended the TAMKO check funds to retain their TBE status upon deposit into the 4342 account.  *See* Fla. Stat. § 655.79(1).  Upon review, the record is devoid of a written instrument evincing an intent to destroy the TBE status of the TAMKO check.  Absent evidence of fraud, undue influence, or other clear and convincing evidence of a contrary intent, therefore, the presumption should stand.  Fla. Stat. § 655.79(2).  In this instance, BB&T does not argue that fraud or undue influence destroyed the TBE status of the TAMKO check.  Instead, BB&T essentially argues that the conveyance of the TAMKO funds to the 4342 account constituted a

---

though only one of the owners is the debtor; these rights exist irrespective of who contributed the funds to the Account.  Similarly, we can enforce overdraft liability in the Account against any owner individually.

(Dkt. No. 62, Exh. G at 4).  As a 2012 account statement for the 4342 account indicates, the account has the "or" connector between the names of the husband and wife, thus denoting a TBE account under these Rules and Regulations.  *See* Hearing Exh. 12.

Furthermore, during the hearing on this matter, John Barry, counsel for SunTrust testified regarding the Maxwells' accounts with SunTrust.  Barry testified that the 4342 account was initially opened in only Maxwell's name in January 2006 thereby allowing only Maxwell access to the account.  *See* Hearing Exh. 18.  A second signature card was subsequently signed by both Maxwell and Mrs. Maxwell and issued in April 2006 (Dkt. No. 62, Exh. D).  Barry testified that the second signature card was issued since the first signature card was incomplete because the first signature card had been prepared for both of the Maxwells' signatures but had never been signed by Mrs. Maxwell.  According to Barry, the second signature card obliterated the first signature card and created a new account and new contract with SunTrust and the Maxwells even though the same account number was used.  Pursuant to the second signature card and the operative Rules and Regulations for the account, Barry testified that SunTrust would consider the 4342 account as a TBE account.

conveyance of interest from Mrs. Maxwell to Maxwell.  *See Rollins v. Alvarez*, 792 So.2d 695, 696 n.2 (Fla. 5th DCA 2001) (noting that wife's conveyance of property to trust controlled by her husband destroyed the TBE character of the property that may have existed pre-transfer); *Hunt*, 200 So. at 77-78 (finding husband's conveyance of his real property interest to his wife evinced intent of both parties to divest husband of his interest and vest it in his wife).

As noted previously, TBE status may be terminated by the conveyance of interest from one spouse to the other.  *In re Koesling,* 210 B.R. at 489.  The circumstances of the present case do not show that Mrs. Maxwell intended to convey her interest in the TAMKO check to her husband via the 4342 deposit or at any other time.  Rather, the Maxwells have consistently maintained that they intended to use the TAMKO check funds for their joint benefit and for the repair of their roof.  Indeed, they obtained a proposal and estimate for roof repairs from Miller Construction Management in March 2012 (Dkt. No. 62, Composite Exh. A).  Miller Construction Management provided an estimate in the amount of $257,346.00, an amount identical to the TAMKO check amount (Dkt. No. 62, Composite Exh. A & B).  The TAMKO check was issued in the name of Maxwell and Mrs. Maxwell on April 10, 2012 (Dkt. No. 62, Exh. B).  Mrs. Maxwell deposited the TAMKO check into the 4342 account, an account over which both she and Maxwell had control and could withdraw funds, three days after receipt of the check (Dkt. No. 62, Composite Exh. C).  A few weeks later, a building permit allowing the Maxwells to repair the roof of their house was issued.  *See* Hearing Exh. 9.  According to the Maxwells, roofing repairs began shortly thereafter.

Nothing in the record indicates that Mrs. Maxwell intended the deposit of the TAMKO

9

check to divest her of her interest in the funds or to destroy its TBE status.  Furthermore, both Maxwell and Mrs. Maxwell's actions comport with their mutual intent to use the funds from the TAMKO check for roof repairs.  Arguably, had Mrs. Maxwell directly transferred the TAMKO check funds to the 5520 account, an account over which she had no control, the requisite intent to destroy the TBE status of the TAMKO check *might* be found because such a transfer would potentially terminate Mrs. Maxwell's interest in the funds.  That is not the case, however.  Given the TBE status of the TAMKO check and the Maxwells' mutual intent to use the TBE funds for the same purpose, I find that Mrs. Maxwell did not intend to convey her interest in the TAMKO check to her husband by depositing the funds in the 4342 account or to relinquish control over the funds.  The TAMKO check funds thus retained their TBE status upon deposit into the 4342 account.

Following the deposit of the funds into the 4342 account, however, Maxwell unilaterally transferred those funds to the 5520 account, an account for which he was the sole account holder. BB&T contends that Mrs. Maxwell consented to Maxwell's withdrawal of the TAMKO check funds from the 4342 account and subsequent transfer to the 5520 account based upon the language found in the Rules and Regulations governing the 4342 account (Dkt. No. 62, Exh. G. at 4).  According to BB&T, Mrs. Maxwell's consent destroyed the TBE status of the Tamko check funds.  BB&T asks the Court to infer Mrs. Maxwell's consent to destroy the TBE status of the TAMKO check solely on the basis of her consent to allow Maxwell to alienate funds from the 4342 account.  The terms and signatures associated with the 4342 account constitute an agreement by the Maxwells to permit each spouse to act on behalf of the other, but this agreement

10

alone is insufficient to destroy TBE status. *See Beal Bank*, 780 So.2d at 62. BB&T's claim hinges on the language governing the terms of the 4342 account, which states in pertinent part that "[e]ach joint owner on a Joint Account may withdraw, by any means we make available, any or all of the funds on deposit . . ." (Dkt. No. 62, Exh. 7 at 4). The ability of one spouse to make an individual withdrawal from an account does not defeat the unity of possession where the account agreement contains a statement providing each spouse permission to act for the other. *Beal Bank,* 780 So.2d at 56, 62; *see also Passalino*, 886 So.2d at 298 ("While the evidence indicated that either [spouse] could order disbursements, this does not defeat the characterization of the trust funds as property held as a tenancy by the entireties."). As such, alienability of TBE property does not demonstrate that the property is not TBE. *See Beal Bank*, 780 So.2d at 62. Moreover, the non-severability doctrine preserves the TBE status of funds even after one spouse transfers money from an account without the consent of the other. *Sitomer*, 660 So.2d at 1114. As Mrs. Maxwell testified, she did not consent to the transfer of the TAMKO check funds to the 5520 account. *See* Dkt. No. 62, Exh. F. Given the foregoing, Maxwell's unilateral transfer of the funds to the 5520 account did not destroy their TBE status.

### C.    Conclusion

Based upon the foregoing, I find that neither the deposit of the funds by Mrs. Maxwell into the 4342 account or the subsequent transfer by Maxwell to the 5520 account destroyed the TBE status of the TAMKO check funds. Consequently, I find that the Disputed Funds in the 5520 account constitute TBE property and are therefore only accessible to creditors of the Maxwells jointly. Since BB&T is only a creditor of Maxwell, BB&T cannot attach the Disputed Funds.

11

For these reasons, it is hereby

RECOMMENDED:

1.  The Motion to Dissolve Writ of Garnishment (Dkt. No. 62) be GRANTED.

IT IS SO REPORTED in Tampa, Florida on August 24, 2012.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Steven D. Merryday

Counsel of Record